IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| SCENERA RESEARCH LLC,<br><br>        Plaintiff,<br><br>  vs.<br><br>ROBERT PAUL MORRIS,<br><br>        Defendant. | Civil Action No. 5:09-cv-412-FL |
| **consolidated with** | |
| ROBERT PAUL MORRIS,<br><br>        Plaintiff,<br><br>  vs.<br><br>SCENERA RESEARCH LLC and<br>RYAN C. FRY,<br><br>        Defendants. | Civil Action No. 5:09-cv-439-FL |

## RESPONSE OF SCENERA RESEARCH LLC AND RYAN FRY IN OPPOSITION TO DEFENDANT ROBERT PAUL MORRIS'S MOTION TO COMPEL DISCOVERY (DOCUMENTS SUBJECT TO CLAIMS OF PRIVILEGE)

Defendant Morris's second Motion to Compel [Dkt. 66] should be denied. Morris again disregards the prerequisites this Court established for filing a motion to compel by failing to first convene a telephonic conference with the Court. Morris also ignores Rule 26(b)(5)(B): Morris's latest Motion discusses the contents of attorney-client privileged documents, despite having received repeated notice from Scenera that such documents were inadvertently produced. Over a month before the Motion was filed, Scenera notified Morris of his obligations under Rule 26(b)(5)(B), which requires a party to promptly return or destroy the inadvertently produced documents or to promptly seek Court guidance as to the application of the privilege by filing them under seal. And, after Scenera revised its privilege log to respond to Morris's other objections, even then Morris failed to confer with Scenera in an attempt to resolve this matter. Instead, Morris filed the instant Motion on the last day to do so, without prior Court approval. Furthermore, without informing the Court of Scenera's assertion of the attorney-client privilege, he has referenced the contents of these documents in his unsealed Motion in an attempt to seek *additional* privileged Scenera documents under a waiver theory.

Morris's argument that Scenera's inadvertent production of privileged documents constitutes a subject matter privilege waiver is likewise without merit. Federal Rule of Evidence 502 is clear that a subject matter waiver requires the *intentional* production of privileged documents. Yet there is no basis for claiming that Scenera's inclusion of documents from attorney Lawrence Brannian in its extensive production (in total, Scenera produced about 22,000 documents) was intentional. Once it learned of the error, Scenera promptly responded to protect the privilege, and gained no tactical advantage from the production. Scenera's inadvertent disclosure does not entitle Morris to seek the production of *additional* privileged documents, nor does it justify his flagrant violation of Rule 26(b)(5)(B).

Morris's further request that this Court review dozens of privileged documents—based solely on speculation as to their contents—also fails. Morris contends that the Court should conduct an *in camera* review simply because documents pertaining to Scenera's General Counsel could potentially contain non-privileged communications. Morris does not explain why he objects to the specific documents Scenera has claimed as privileged, nor does he contend that Scenera's privilege log was somehow defective. Morris's speculative Motion provides no reason for this Court to undertake an *in camera review*.
1

This is not a case where a company failed to produce any communications from its General Counsel. Just the opposite, the documents Scenera has produced—and Morris's observation that they include non-privileged communications with Scenera's General Counsel—form the basis for Morris's speculation that the withheld documents might *also* contain non-privileged communications. Morris's speculative Motion provides no reason for this Court to undertake an *in camera review*. Moreover, Morris deposed the General Counsel, Steve Tytran—and had an ample opportunity to create some factual foundation for its present argument; instead, no such facts exist.

After Scenera requested that Morris withdraw his procedurally defective Motion, he has refused, and now attempts to belatedly correct his repeated procedural failures by contacting the Court nearly a week *after* filing his motion about scheduling an informal conference on the issue. In his letter, Morris represents to the Court that the parties' ongoing discussions about Scenera's privilege log provide "extenuating circumstances" for his failure to comply with this Court's procedures. Yet his Motion does not object to the privilege log, and bears no relation to Scenera's revisions to the log since it was originally produced in October.

## **FACTS**

### 1. **Scenera's Privilege Log**

On October 22, 2010, Scenera produced to Morris a privilege log listing over 700 privileged documents. *See* Moye Decl. ¶ 5. The parties have conferred on multiple occasions about the privilege log, and Morris sent Scenera a color-coded spreadsheet identifying purported deficiencies in the privilege log. *Id.* Scenera most recently addressed Morris's concerns on December 11, 2010, when it sent Morris a letter responding to his outstanding objections and supplementing the privilege log. *Id.* ¶ 6, Exh. A. The amended privilege log added additional specificity to each instance in which Morris had asserted that Scenera's description was too general. *Id.* ¶ 6. After receiving Scenera's most recent letter and revised privilege log, Morris never claimed that the narratives involving General Counsel Steve Tytran's communications were still too general, nor did he raise any other objection. *Id.* ¶ 7. Rather than confer with Scenera about its revised privilege log, Morris filed his Motion.

### 2. Scenera's Notice to Morris of the Inadvertent Production of Privileged Documents

Morris had been informed on November 9, 2010 that any communications between Scenera and its outside counsel, Lawrence Brannian, as being subject to the attorney-client privilege. *See id.* ¶ 9. Indeed, on November 9, 2010, Morris's counsel had attempted to include communications between Scenera and attorney Brannian as an exhibit in a deposition. *Id.* Scenera promptly objected, instructed the witness not to answer any questions on those exhibits, and, on November 10, unequivocally advised Morris's counsel that all communications with Mr. Brannian were privileged and had been disclosed inadvertently. *Id.* ¶¶ 9, 11. Scenera's letter quoted from the Protective Order in this matter [Dkt. 48], which provides that "Federal Rule 26(b)(5)(B) shall govern the production of information subject to a claim of privilege . . . ." Moye Decl. Exh. B. Scenera also quoted the requirements of Rule 26(b)(5)(B) that upon receiving notice of an inadvertent production of privileged documents, the receiving party "must promptly return, sequester, or destroy the specified information and any copies it has." *Id.* The letter stated that Scenera has not "waived any privilege" regarding these communications, and requested that Morris's counsel "promptly delete and otherwise destroy every document containing communications between Mr. Brannian and Scenera as well as any documents summarizing, discussing, or quoting these documents." *Id.*

After Morris failed to respond to Scenera's November 10 letter, on November 29, Scenera reiterated its request that Morris's counsel destroy the Brannian documents. *Id.* Exh. C. Counsel for Morris responded later that day and stated: "I have not forgotten about your letter, and will respond when I can get past the current pressing deadlines." *Id.* On December 11, having still heard no response, Scenera wrote to Mr. Brock again, stating "<u>I would like to hear back from you as soon as possible concerning the inadvertently produced privileged Brannian documents and my requests that they be returned to Scenera pursuant to Rule 26.</u>" *Id.* Exh. A (emphasis added). Morris again failed to respond.

Instead, Morris filed the instant Motion, which predicates an argument about privilege waiver on the fact that the Brannian documents were produced. Morris contends that 215 documents relating to the subject matter of "the employment agreements"—which term Morris never defines—contain email chains from outside counsel. Morris's Mem. at 9. According to Morris's unexplained unsworn calculations, nearly all of

3

US2008 2188897.7

Case 5:09-cv-00412-FL   Document 79   Filed 12/23/10   Page 4 of 13

these documents are email chains between Scenera and Mr. Brannian. *Id.* Exh. 10 [Dkt. 67-7].[1] In arguing that Scenera waived the privilege as to yet unproduced documents, Morris never asks the Court to determine if the *Brannian documents* are privileged, nor has he filed the documents under seal. In fact, Morris fails to even inform the Court that Scenera asserts a privilege claim over these documents.

### 3. Morris's Belated Request for a Telephonic Conference and His Conflation of the Issues

On December 20, 2010, Scenera sent Morris a letter requesting that he withdraw his procedurally-defective Motion. Moye Decl. Exh. D. Morris refused, stating "As I understand Judge Flanagan's practice, it is intended to assist the parties . . . [only] where a compromise solution is possible." *Id.* Exh. E. Nevertheless, Morris now belatedly seeks a telephonic conference with the Court, *id.* Exh. F, conflating the subject of his Motion with the issues raised by Scenera's repeated requests that he return or destroy its inadvertently produced documents—claiming the issues are "inter-related." *Id.* Morris even claims he is seeking an informal conference on the latter issue "*pursuant* to the provisions of Rule 26(b)(5)(B) as well as Judge's Flanagan's Case Management Order." *Id.* (emphasis added). Yet Morris has not filed the inadvertently produced documents under seal with the Court, as required by Rule 26, nor would such a filing constitute a "motion to compel discovery" pursuant to the Case Management Order's telephonic conference provisions.

In his letter, Morris also suggests that the new telephonic conference would cover issues distinct from those raised in his Motion. Morris goes so far as to claim that his Motion "does not specifically address" Morris's "assertion that [Scenera's] document production constitutes a subject matter waiver of documents and communications related to Morris's contract." *Id.* Yet, Section II of the argument in his Memorandum, entitled, "Scenera's Production Effected a Waiver of the Attorney Client Privilege as to the Subject Matter of the Employment Agreements," is dedicated to that very issue. Morris's Mem. at 8.

---

[1] Each of the 13 "Snell Wylie" documents that Morris identifies in his unsworn unexplained exhibit notations involve Lawrence Brannian as a sender or recipient, according to the exhibit. *See* Morris's Mem. Exh. 10 [Dkt. 67-7]. The other seven listed documents from Bowditch & Dewey, LLP, were also inadvertently produced. Scenera has notified Morris of the inadvertent production and of his duties under Rule 26(b)(5)(B). Moye Decl. Exh. D.

**ARGUMENT**

I. **MORRIS'S MOTION IGNORED THE PROCEDURAL REQUIREMENTS OF THIS COURT AND THE FEDERAL RULES.**

   A. **Morris Has Again Disregarded the Requirements of the Case Management Order.**

The Case Management Order unambiguously requires that the complaining party *shall* convene a conference among the parties and the Court. Dkt. 21 § II(D). The Order further provides that: "***Motions to compel filed . . . without advance conference with the court, absent extenuating circumstances, summarily will be denied.***" *Id.* Just as he did with his first motion to compel [Dkt. 58], Morris wholly failed to comply with this Court's procedural requirements, as he never convened a telephonic conference with the Court.

No "extenuating circumstances" justify Morris's failure to comply with the procedural requirements. In Morris's informal letter to the Case Manager, he states that the "late production of [Scenera's] privilege log on Saturday night, December 11, 2010, created extenuating circumstances." This statement is misleading. Scenera produced its privilege log in *October*. Moye Decl. ¶ 5. The revisions it sent Morris in December, in response to his own objections, are not the subject of the instant Motion. Morris's privilege waiver argument bears no relation to the revised privilege log, and could have been made in early November when Scenera first notified Morris of the inadvertent disclosure. Morris's request for the production of Tytran documents is also not based on purported privilege log deficiencies,[2] but rather on his general contention that, based on his review of *non-privileged* deposition testimony and documents, the Court should review certain other communications of Mr. Tytran. *See* Morris's Mem. at 7–8.[3] The issues raised in Morris's pending motion are also not "inter-related" with his requirements under Rule 26(b)(5)(B), s*ee infra* § II(B), and his various attempts to tie the two together, so as to justify requesting a belated conference with the Court, fail.

---

[2] The list of Tytran documents of which Morris now seeks to compel production [Dkt. 66-3] does not conform to any of Morris's prior color-coded objections. Moye Decl. ¶ 8. Rather, the documents Morris lists were originally objected to on four different bases (including objections about a missing date or missing author) and they shared no objection in common. *Id.*

[3] "Given the relationship between Morris and Tytran, and what the testimony and documents produced show about the nature of the [sic] Tytran's involvement . . . it is unlikely that Tyrtan was acting in a professional legal capacity in most of the communications he had with [the CEO] and/or [the Comptroller]. . . . Therefore, Morris asks that the Court order the documents shown on [sic] list accompanying the Motion to compel be produced, or that the Court conduct an in camera review . . . ." Morris's Mem. at 7–8.

### B. Morris Has Ignored His Duties Regarding Inadvertently Produced Documents.

North Carolina Rule of Professional Conduct 4.4(b) requires a lawyer who receives a writing that he knew or reasonably should have known was sent inadvertently to "promptly notify the sender." This ethical rule provides no exception based on the receiving lawyer's belief that the inadvertent production constitutes a waiver. *See id.* Comment [2] (stating waiver is a matter of law beyond the scope of the rules). By requiring notification of the producing party, the ethics rules "permit that person to take proactive measures." *Id.*

Once the producing party learns of its inadvertent production, Federal Rule 26(b)(5)(B): "After being notified, a party *must* promptly return, sequester, or destroy the specified information and any copes it has; *must* not use or disclose the information until the claim is resolved; *must* take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim." Fed. R. Civ. P. 26(b)(5)(B) (emphasis added). When a party seeks court guidance as to a privilege waiver, "it should supply the court with the details about the claim provided by the party giving notice." WRIGHT AND MILLER, *Federal Practice and Proc* § 2016.7 (3d ed.).

These obligations have been violated in a number of ways. Even if Morris's counsel thought that the inadvertent disclosure was not evident when reviewing Scenera's production, Scenera gave unambiguous notice of the inadvertent disclosure no later than November 10, 2010. That letter specifically cited Rule 26(b)(5)(B)—which is also referenced in the Protective Order [Dkt. 48]—and it even quoted the text of the Rule. Moye Decl. Exh. B. After receiving no notification that Morris had promptly returned or destroyed the documents, or that he had filed them under seal with the Court, on November 29 and December 11, Scenera sent two additional requests for Morris to confirm his compliance with the Rules. *Id.* Exh. A, C. The only response Scenera received was Morris's counsel's statement that "<u>I have not forgotten about your letter, and I will respond when I can get past the current deadlines</u>." *Id.* Exh. D (emphasis added). The instant Motion was Morris's counsel's first "response."

Morris's Motion does not seek Court guidance on the privilege of the inadvertently produced documents, and it fails to even inform the Court that Scenera has made a claim of privilege as to these documents. Rather, the Motion seeks to compel production of *additional* privileged documents. Morris's

6

US2008 2188897.7

Case 5:09-cv-00412-FL   Document 79   Filed 12/23/10   Page 7 of 13

Motion thus not only fails to comply with the Rules—since Morris has still not filed the yet-unreturned documents with the Court—but it makes "use" of the documents before the privilege claim has been resolved. *See* Fed. R. Civ. P. 26(b)(5)(B). Morris's belated attempt to request an informal conference does not fulfill his duties under Rule 26(b)(5)(B), and is not even an appropriate use of the telephonic conference procedure. See Dkt. 21 (requiring telephonic conferences before filing a "motion to compel discovery").

## II. MORRIS'S MOTION SHOULD BE DENIED ON THE MERITS.

Not only is Morris's Motion procedurally defective, but it raises no valid objection to Scenera's privilege log and provides no basis to claim that Scenera's disclosure of privileged documents was *intentional*, as would be required for a subject-matter waiver.

### A. Morris's Speculation that General Counsel's Communications *Might* Not be Privileged

Here, Morris's Motion does not claim that Scenera's privilege log fails to "describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," *see* Fed. R. Civ. P. 26(b)(5)(B)(ii), nor does it object to Scenera's efforts to address Morris's purported concerns with the privilege log. Rather, Morris simply speculates that perhaps some portion of the withheld communications between Scenera and its General Counsel might not be privileged—a possibility that exists in every case involving privileged documents.

Other than broad speculation, Morris addresses only two categories of documents, accounting for four entries on his supposed list of non-privileged Tytran documents. *See* Morris's Mem. at 6–7. First, Morris contends that on May 30, 2009 Mr. Tytran likely reported to the CEO his purported statement to Morris that he could not work at Scenera if he sued the company. *Id.* at 7. Second, Morris speculates that a July 9 conversation occurred between the CEO and the General Counsel about terminating Morris, which he claims is "not likely an attorney client communication and is likely material." Morris's Mem. at 7. Material or not, such conversations, if they occurred, would be privileged.

At the time of both of the communications Morris imagines in his Motion, Morris had already threatened to sue the company and Mr. Tytran had been asked by Scenera's CEO to provide legal advice

to the company about the dispute with Morris.[4] Communications between the CEO and the General Counsel about how to respond to a threatened lawsuit and whether to terminate a threatening employee would be privileged. *See, e.g.*, *Koch v. Specialized Care Servs.*, 437 F. Supp. 2d 362, 368–69 (D. Md. 2005) (defendants "undisputedly sought the legal advise of their in-house counsel" when they used him "for consideration and advice about [plaintiff's] employment situation and analysis of [his] communications to defendants and formulation of their legal position"). Morris's further suggestion that discussions of factual events between Scenera's CEO and General Counsel cannot be privileged, Morris's Mem. p. 8 ("Such information is not privileged. It is fact."), is wrong. *See, e.g.*, *Banks v. Office of the Sen. Sergeant-at-Arms*, 228 F.R.D. 24, 27 (D.D.C. 2005) (holding that communications with counsel recounting facts pertinent to a developing legal situation "were intended to be confidential and were part of the process by which the [client] sought legal advice").

Morris never discusses the dozens of other documents listed in his exhibit—which all post-date May 17, 2009,[5] *see* Dkt. 66-3—nor does he provide any basis for objecting to their privilege status except to speculate that some of them might involve communications outside Mr. Tytran's professional capacity. Morris's purported support for this conclusion is the circular[6] observation that examples of non-privileged communications by Mr. Tytran are present in the *non-privileged* documents and deposition testimony Morris has reviewed: "Given . . . what the testimony and documents produced show about the nature of the [sic] Tytran's involvement . . . it is unlikely that Tytran was acting in a professional legal capacity in most of the communications he had with [the CEO] and/or [the Comptroller]." Morris's Mem. at 7–8. Scenera's production of non-privileged Tytran documents while withholding others on privilege grounds is precisely what would be expected as to the communications of an in-house attorney.

---

[4] Mr. Tytran has testified that on or about May 17, 2009, Scenera's CEO had requested his professional assistance in its dispute with Morris, and that from the date onward, he served Scenera in his capacity as its General Counsel with regard to the dispute. Deposition of Stephen Tytran 133:3–134:11, attached hereto as Exhibit 1.

[5] Scenera is not claiming that responsive document containing communications by Mr. Tytran after May 17, 2009 are necessarily privileged. However, the documents listed in Morris's exhibit [Dkt. 66-3], which all post-date Mr. Tytran being asked to provide legal advice, were specifically reviewed and found to be privileged. Moye Decl. ¶ 3.

[6] Morris's argument assumes the very point it seeks to prove—that the Tytran documents withheld as privileged are similar in nature to the Tytran documents that were produced to Morris.

8

US2008 2188897.7

Morris thus has no basis for claiming that the withheld documents might not be privileged, other than his own speculation. Especially in light of Morris's failure to comply with this Court's procedural requirements, the Court should decline to exercise its discretion to undertake its own review of the privileged Tytran documents without some justification for doing so.

### B. Inadvertently Produced Documents Do Not Effect a Subject Matter Waiver

Ignoring the mandate of Rule 26(b)(5)(B), Morris's Motion does not seek a ruling as to whether Scenera's inadvertent production constitutes a waiver as to the documents already produced. His Motion concerns only whether he is entitled to the production of *additional* privileged documents on the same subject matter as the documents he has wrongfully refused to return or destroy.

Pursuant to Federal Rule of Evidence 502, when privileged materials are disclosed inadvertently, a waiver would only apply to the documents actually produced. The cases Morris cites regarding subject-matter waiver concern *deliberate* disclosure of privileged communications. *See In re Martin Marietta Corp. v. Pollard*, 856 F.2d 619 (4th Cir. 1988) (employer's prior disclosures to government in an attempt to settle criminal investigation constituted waiver); *Aveka LLC v. Mizuno Corp*, 243 F. Supp. 2d 418 (M.D.N.C. 2003) (reliance on advice of counsel as defense constitutes subject matter waiver). However, even before Rule 502 was enacted in 2008, "[t]he general rule that a disclosure waives not only the specific communication but also the subject matter of it in other communications is not appropriate . . . unless it is obvious a party is attempting to gain an advantage or make offensive or unfair use of the disclosure." *Parkway Gallery Furniture, Inc. v. Kittinger/Pa. House Group, Inc.*, 116 F.R.D. 46, 52 (M.D.N.C. 1987). Rule 502 codifies this principle, providing that a subject-matter waiver only occurs when 1) the waiver was "<u>intentional</u>"; 2) the disclosed and undisclosed communications or information concern the same subject matter; and 3) they ought in fairness to be considered together. *Id.*

The facts demonstrate that, in reviewing approximately 33,000 documents for responsiveness and privilege, Scenera produced the privileged documents in question *inadvertently*. *See* Moye Decl. ¶¶ 3, 10 ("The Brannian documents were produced inadvertently."). Morris's argument to the contrary is based on three immaterial observations: i) that Scenera produced many documents on the subject matter of

9

US2008 2188897.7

employment agreements; ii) that they appeared in multiple sets of Scenera's rolling production; and iii) that a large number of them involved attorneys. Dkt. 67 at 10. None of these observations suggests an intention to produce privileged documents on the subject of "employment agreements." As to the first point, the large number of *non-privileged* documents produced on the subject of employment agreements reflects only that such documents were responsive to Morris's discovery requests. As to the latter observations, the fact that a number of Brannian documents were produced throughout Scenera's production (out of about 33,000 reviewed documents) evidences a single mistake by certain of its document reviewers: the misimpression that Mr. Brannian was a non-attorney consultant. Moye Decl. ¶ 10; *see F.H. Chase, Inc. v. Clark/Gilford*, 341 F. Supp. 2d 562, 565 (D. Md. 2004) (finding no waiver, even of the documents actually produced, where the disclosure of 500 privileged documents resulted from "only one mistake, albeit a major one"). Morris has pointed to no strategic reason why Scenera would have deliberately disclosed these documents. Rather, as soon as it learned of the error, Scenera diligently attempted to follow the clawback procedure outlined in Rule 26(b)(5)(B)—with which Morris has refused to comply.

Scenera's inadvertent disclosure does not constitute a subject matter waiver.

## **CONCLUSION**

For these reasons, Scenera and Ryan Fry request that this Court deny Morris's Motion to Compel and award them the reasonable costs and expenses, including attorneys' fees, they have incurred in responding to Morris's procedurally deficient Motion.

US2008 2188897.7

10

Case 5:09-cv-00412-FL   Document 79   Filed 12/23/10   Page 11 of 13

Respectfully submitted this the 23rd day of December, 2010.

**KILPATRICK STOCKTON LLP**

/s/ John M. Moye
Hayden J. Silver III (NC State Bar 10037)
jaysilver@kilpatrickstockton.com
John M. Moye (NC State Bar 35463)
jmoye@kilpatrickstockton.com
3737 Glenwood Avenue, Suite 400
Raleigh, NC 27612
Phone: (919) 420-1700
Facsimile: (919) 420-1800
*Attorneys for Scenera Research LLC and Ryan Fry*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Court using the CM/ECF system which will send notification of filing to the following parties:

>Walter E. Brock
>Young Moore and Henderson P.A.
>WEB@YMH.com
>
>Anthony J. Biller
>Coats & Bennett PLLC
>abiller@coatsandbennett.com

This the 23rd day of December, 2010.

/s/ John M. Moye

John M. Moye

KILPATRICK STOCKTON LLP
3737 Glenwood Avenue, Suite 400
Raleigh, North Carolina 27612
Phone: (919) 420-1700
Fax: (919) 420-1800